# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.R.-1 and M.R.-2**

**No. 19-0550** (Harrison County 18-JA-46-2 and 18-JA-47-2)

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father M.R.-3, by counsel Allison S. McClure, appeals the Circuit Court of Harrison County's March 20, 2019, order terminating his parental rights to M.R.-1 and M.R.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Jenna L. Robey, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying him a post-adjudicatory improvement period, terminating his parental rights without imposing a less-restrictive alternative, and denying his request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed a child abuse and neglect petition against petitioner and the mother after M.R.-2 tested positive for amphetamine and methamphetamine at birth. The DHHR alleged that the parents had extensive histories of drug abuse, including numerous reports of being "passed out" in their car in parking lots. The DHHR also reported that the mother abused drugs during her pregnancy with M.R.-2, and petitioner admitted to knowledge of the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children and petitioner share the same initials, we will refer to them as M.R.-1, M.R.-2, and M.R.-3, respectively, throughout this memorandum decision.

mother's drug use while pregnant. The DHHR further alleged that its caseworker needed a police escort to leave petitioner's home with the mother and the children after petitioner exhibited threatening behavior. Additionally, the DHHR alleged that petitioner regularly threatened the DHHR worker assigned to his in-home-safety plan, visited the children without the DHHR worker's consent, and has an extensive criminal history. Based on these facts, the DHHR concluded that the parents subjected the children to domestic violence and/or a drug-endangered environment, constituting abuse and neglect of the children.

In August of 2018, the circuit court held an adjudicatory hearing wherein petitioner failed to appear, but counsel represented him. The DHHR presented evidence that petitioner knew of the mother's drug use while she was pregnant with M.R.-2 and exposed the children to drug abuse. Based upon the evidence presented, the circuit court adjudicated petitioner as an abusing parent and ordered him to submit to regular drug screening. Thereafter, petitioner failed to appear for his random drug screenings and, upon screening at the courthouse prior to his dispositional hearings, tested positive for illegal drugs. As a result, the circuit court continued each hearing due to petitioner's inability to assist his counsel in his own defense. After the third continued hearing, the circuit court held petitioner in contempt for the failed drug screens and incarcerated him. In January of 2019, the circuit court released petitioner, and he submitted to a psychological evaluation.

In February of 2019, the circuit court held a final dispositional hearing, wherein petitioner moved for a post-adjudicatory improvement period. In support, petitioner testified that he was employed, no longer used drugs, did not have anger management issues, and his criminal convictions were not his fault. Petitioner claimed that he would do whatever the circuit court asked of him to have the custody of his children returned to him. However, petitioner did not accept responsibility for his actions, arguing that the mother was solely at fault for abusing drugs while pregnant and the DHHR should have never removed the children from his home.

In contrast, the DHHR presented evidence that petitioner lied about his employment and his drug use during his parental fitness evaluation, which nonetheless concluded that petitioner did not have the capacity to parent the children. Further, the DHHR worker testified that petitioner refused to cooperate with service providers and did not appear for hearings until his first dispositional hearing in October of 2018. The DHHR worker did not believe that petitioner could correct the conditions of abuse and neglect in the near future because he failed to take advantage of the ample opportunities offered to him to correct his behavior. Regarding post-termination visitation, the guardian argued against it because of petitioner's threats towards the DHHR, his lack of a bond with the youngest child, and the children's need for permanency. Having heard this evidence, the circuit court denied petitioner's request for an improvement period and terminated his parental rights to the children, finding that petitioner was not a credible witness and that he failed to take responsibility for his actions. As such, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's

welfare. Further, the circuit court denied petitioner's request for post-termination visitation. It is from the March 20, 2019, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying him a post-adjudicatory improvement period because "his actions in the months prior to his final dispositional hearing established that he was substantially likely to fully comply with the terms and conditions of a post-adjudicatory improvement period." Specifically, petitioner argues that he presented evidence demonstrating that he was participating in a self-help recovery program and had passed his drug screens since his release from incarceration. Therefore, petitioner claims he was likely to participate in an improvement period. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner failed to demonstrate that he was likely to fully participate in an improvement period. The record establishes that petitioner did not participate in the proceedings

---

[2]The mother's parental rights were also terminated below. According to the DHHR and the guardian, the permanency plan for the children is adoption in their current foster home.

below until after the circuit court adjudicated him as an abusing parent. On appeal, petitioner fails to explain why he did not comply with the DHHR's attempts to offer him services, both before and after the filing of the abuse and neglect petition. Indeed, petitioner was only compliant with drug screening beginning in January of 2019. Most importantly, petitioner failed to acknowledge that his actions constituted abuse and/or neglect. At the final dispositional hearing, petitioner claimed that he remained sober after his incarceration only because he did not have a drug abuse problem. Despite numerous positive drug screens throughout the proceedings, petitioner continuously failed to acknowledge that he was addicted to drugs and placed blame for any abuse and neglect solely on the mother. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's failure to acknowledge his drug addiction and how his actions constituted abusive and neglectful behavior, the granting of an improvement period would have been futile. Accordingly, we find that petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in terminating his parental rights when less-restrictive alternatives were available. According to petitioner, the termination of his parental rights was "not necessary [for] the children's welfare" because the permanency plan for the children is reunification with their mother pending her successful completion of her improvement period. We find no merit in petitioner's argument.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) sets forth that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts."

The record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future due to his inability to follow through with a family case plan. Moreover, petitioner sent numerous threatening text messages to the DHHR workers throughout his case and was candid about his hostility towards the DHHR. Further, petitioner ignored the DHHR's attempts to communicate with him, failed to attend and cooperate in any multidisciplinary meetings, and failed to otherwise acknowledge that he was a named respondent in the proceedings until disposition. Even after learning that his parental rights could be terminated, petitioner appeared under the influence of drugs at his scheduled dispositional hearings. Only after the circuit court held him in contempt and placed him in custody did petitioner appear drug-free for his dispositional hearing. Finally, petitioner never

4

admitted that he had a substance abuse problem or acknowledged that his actions constituted abuse and/or neglect of the children. As such, the record supports the findings that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the children's welfare given petitioner's very minimal compliance with the family case plan.

To the extent that petitioner argues he should have been granted a less-restrictive alternative than the termination of his parental rights, we have held that

> "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, the circuit court did not abuse its discretion in declining to employ a less-restrictive alternative to the termination of petitioner's parental rights, and we find that he is entitled to no relief in this regard.

Also, petitioner argues that the circuit court erred in denying him post-termination visitation with the children. According to petitioner, the evidence presented at the final dispositional hearing established that he has a strong bond with the older child. Petitioner also argues that the mother testified in favor of his post-termination visitation with the children. Further, petitioner believes that post-termination visitation is in the children's best interests. We find that petitioner is entitled to no relief in this regard.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being

and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).

The evidence demonstrates that post-termination visitation would not have been in the children's best interests. The DHHR worker testified that she implemented supervised visits immediately after the children were removed from the home, yet petitioner failed to cooperate with the assigned visitation workers, which resulted in the termination of his visitation. Also, the guardian argued against post-termination visitation with petitioner because of his criminal history and his concerning statements regarding knowing where the children's foster family lived. The guardian concluded that petitioner could not be trusted to act appropriately with the children if given visitation. Further, the record does not support a finding that post-termination visitation would have been in M.R.-2's best interests as petitioner had spent little time with her since her birth and developed no bond with her. Accordingly, we find no error in the circuit court's decision to deny petitioner post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 20, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: March 13, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6